William J. Edelman (SBN 285177)
**MILBERG, PLLC**
280 S. Beverly Drive-Penthouse
Beverly Hills, CA 90212
Phone: (771) 474-1121
Email: wedelman@milberg.com

Adam E. Polk (SBN 273000)
Abbye R. Ognibene (SBN 311112)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Phone: 415.981.4800
Email: apolk@girardsharp.com
Email: abbyeo@girardsharp.com

*Attorneys for Plaintiff and the Proposed Class*
*[Additional Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

THOMAS GAMLEN, individually and on behalf of all those similarly situated,

Plaintiff,

v.

AMAZON.COM, INC.,

Defendant.

Civil Action No. 3:26-cv-8758

**CLASS ACTION COMPLAINT**

1. Violation of Cal. Civ. Code § 3344
2. Common-Law Right of Publicity
3. Violation of Cal. Bus. & Prof. Code § 17200
4. Quasi-Contract / Unjust Enrichment

**JURY TRIAL DEMANDED**

Plaintiff Thomas Gamlen ("Plaintiff") brings this class action complaint ("Complaint") on behalf of himself and all others similarly situated (the "Class Members") against Amazon.com, Inc. ("Defendant") for violations of California's statutory and common-law—California's Right to Publicity Law (Civil Code § 3344, *et seq.*) and California's Unfair Competition Law (California Business & Professions Code § 17200, *et seq.*)—and for unjust enrichment. Plaintiff alleges as follows:

**INTRODUCTION**

1. Twitch, an online live-streaming platform, is one of the most visited websites in the world. On the site, users (called streamers) can broadcast live videos of themselves playing video games, listening to or making music, or chatting in real time while other users watch and interact through the site's chat features. Twitch is fueled by streamers' videos, which attract millions of viewers every day. Streamers can earn revenue through subscriptions, advertisements, and other avenues.

2. Twitch is owned by Amazon. For years, and unbeknownst to Twitch users, Amazon used Twitch content to train and power Amazon's artificial intelligence (AI) technology. Without notice or permission, Amazon appropriated Twitch streamers' identities and used them as raw material for its commercial generative-AI business. Amazon used this identity-bearing Twitch content, including streamers' names, voices, moving photographs, likenesses, and personas, for its own commercial purposes.

3. For Twitch streamers, the person is the content. A streamer's face, voice, name, mannerisms, on-camera presence, and audience relationship are not incidental to a livestream; they are the core attributes through which the streamer creates and monetizes a channel, builds goodwill, and develops the economic value of the streamer's identity and content.

4. Amazon understood the value of Twitch content, and Twitch has confirmed Amazon's use of that content for its own commercial AI training and development—all while failing to compensate the streamers responsible for it.

5. In August 2026, Twitch quietly introduced a new setting concerning Amazon's use of Twitch channel content for generative-AI training. The new setting asked streamers to "[a]llow your channel content to train generative AI content models at Amazon." Twitch further explained that the

material includes streams, VODs, clips, stream chats, and channel images and text, and that Amazon AI models may generate or synthesize text, audio, images, or video.[1]

6. The setting was defaulted to "on." Twitch's Chief Product Officer explained why bluntly: "If it was opt in, *nobody would opt in*."[2] The admission underscored that creators were unlikely to affirmatively opt in to that use of their identities and content—materials they rely on for their own commercial gain—without compensation. And Amazon knew that, too.

7. While Amazon represents that changing the default setting will prevent streamers' identity and content from being used in future training, it remains silent as to how long it has been harvesting this data and makes no representations that any previously collected data will be purged, that models already trained on the data would be retrained, or that identity-derived model parameters would be removed.

8. Amazon seeks to harvest and use this data—despite acknowledging that streamers are unlikely to agree to such use—because it is incredibly valuable to Amazon's AI business. Amazon develops and commercially offers generative AI systems through Amazon Web Services ("AWS") and Amazon Bedrock, including Amazon's Nova family of AI models with text, image, video, speech, and other multimodal capabilities.[3] Hundreds of thousands of customers use Bedrock and customer spending on Bedrock has grown rapidly, underscoring the commercial value of Amazon's generative-AI business.[4]

9. Amazon's generative-AI disclosure confirms that it trains and tests commercial generative-AI services on datasets that can contain images, audio, and video, including rights-protected

---

[1] Jay Peters, *Twitch Streamers Can Now Opt Out from Training Amazon's AI*, The Verge (Aug. 12, 2026), https://www.theverge.com/tech/979112/twitch-streamers-can-now-opt-out-from-training-amazons-ai (last accessed Aug. 20, 2026).

[2] Alex Blake, *"If It Was Opt In, Nobody Would Opt In": Amazon's AI Is Being Trained on Your Twitch Streams Unless You Turn It Off*, TechRadar (Aug. 13, 2026), https://www.techradar.com/streaming/if-it-was-opt-in-nobody-would-opt-in-amazons-ai-is-being-trained-on-your-twitch-streams-unless-you-turn-it-off-heres-how-to-stop-it (last visited Aug. 20, 2026).

[3] Amazon Web Services, Inc., *Generative AI Development Disclosure*, https://aws.amazon.com/legal/generative-ai-development-disclosure/ (last accessed Aug. 20, 2026).

[4] Amazon.com, Inc., *Amazon.com Announces Second Quarter Results* (July 30, 2026), https://ir.aboutamazon.com/news-release/news-release-details/2026/Amazon-com-Announces-Second-Quarter-Results/default.aspx (last accessed Aug. 20, 2026).

material and personal information.[5] It identifies training as a means of improving its own capabilities, including recognizing visual content and creating content—capabilities it actively monetizes.[6]

10. Amazon used all Twitch streamers' biometric data and content—including Plaintiff's and Class members' Twitch streams and related channel content—in its AI training efforts. This data includes streamers' readily identifiable voices, moving photographs, likenesses, names, and associated personas. It is used for Amazon's commercial purposes, with no consent from or compensation to the streamers who fuel this enterprise.

11. Amazon did not inform Plaintiff of its use of his identity, seek his consent, negotiate a price for its commercial use, or compensate him. Before August 2026, Plaintiff had no way to withhold his channel content from Amazon's generative-AI training.

12. The Twitch Terms governing Plaintiff's creation and streaming of channel content did not grant Amazon an unlimited license to appropriate Plaintiff's identity for any Amazon business purpose. For years preceding this lawsuit, Twitch's User Content license expressly stated that ***Twitch*** could exercise the granted rights "in connection with monetizing the ***Twitch*** Services."[7]

13. On August 12, 2026—the same time Twitch disclosed the Amazon generative-AI training setting—Twitch broadened this language in its Terms to permit exercise of the license in connection with Twitch ***and/or its affiliates' business***. That contemporaneous expansion supports the Plaintiff's reasonable expectation that, before August 12, 2026, the license did not extend to using his identity and content for Amazon's separate generative-AI business and other commercial purposes.[8]

14. California law protects an individual's right to control and profit from the commercial exploitation of their name, voice, photograph, likeness, and identity. Plaintiff brings this action to

---

[5] Amazon Web Services, Inc., *Generative AI Development Disclosure*, https://aws.amazon.com/legal/generative-ai-development-disclosure/ (last accessed Aug. 20, 2026).

[6] *Id.*

[7] Twitch Interactive, Inc., *Terms of Service* at § 8(a)(i) (Oct. 27, 2023), https://legal.twitch.com/en/legal/terms-of-service/20232710/ (emphasis added) (last accessed Aug. 20, 2026).

[8] *Compare* Twitch Interactive, Inc., Terms of Service § 8(a)(i) (Aug. 12, 2026 version), https://legal.twitch.com/en/legal/terms-of-service/ (accessed Aug. 19, 2026) *with* Oct. 27, 2023 archive, https://legal.twitch.com/en/legal/terms-of-service/20232710/.

vindicate that right, recover the value Amazon obtained through unlawful use of his identity via disgorgement of these profits, and end Amazons' continuing commercial exploitation of Plaintiff's and Class members' identities without consent or compensation.

## JURISDICTION AND VENUE

### A. Jurisdiction

15. This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The proposed Class contains more than 100 members; Plaintiff is a citizen of California and Amazon is a citizen of Delaware and Washington; and the amount in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs, including statutory damages, actual damages, profits attributable to the unauthorized uses, punitive damages, restitution, and the value of injunctive relief.

16. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over all claims because each arises from the same common nucleus of operative facts.

17. This Court has personal jurisdiction over Amazon because Amazon purposefully directs extensive business activity to California, owns and controls the California-based Twitch enterprise through which the identity-bearing content at issue was obtained, and intentionally caused the challenged conduct and resulting injuries to California residents.

18. Defendant has purposefully availed itself of the privilege of conducting business within this District and has derived substantial revenue from its activities directed at residents of this District and throughout the United States.

### B. Venue

19. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District through Twitch's San Francisco-based operations and the acquisition, administration, and transfer of Twitch channel content that Amazon used for generative-AI development.

20. Plaintiff and Class members also suffered injury in California.

21. Defendant conducts substantial business in this District and regularly engages in interstate commerce within this District.

22. Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because Defendant is subject to personal jurisdiction in this District.

**C. Intradistrict Assignment**

23. Pursuant to Civil L.R. 3-2(c), assignment to the San Francisco Division is proper because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in San Francisco County. For example, Twitch Interactive, Inc., Amazon's wholly owned subsidiary and the source of the Twitch content at issue, is headquartered in San Francisco. Amazon's acquisition and use of Twitch users' streams and other channel content for generative-AI training was carried out in substantial part through Twitch's San Francisco-based operations, including the systems and personnel responsible for maintaining and administering Twitch content and its use for Amazon AI training.

**PARTIES**

24. Plaintiff Thomas Gamlen is a natural person and citizen of California residing in Anderson, California.

25. Plaintiff is a Twitch streamer and creator who operates the Twitch channel "Raikiln." Plaintiff created his Twitch account in or around August 2017, began streaming on Twitch in or around July or August 2022, and his account remains active.

26. Plaintiff has streamed intermittently since 2022, at times streaming approximately three to four times per month. His streams last approximately two to three hours and primarily consist of Plaintiff playing video games while interacting and speaking with viewers. Plaintiff's natural voice is captured extensively throughout his streams, often for hours at a time, and is associated with Plaintiff's Twitch channel and username.

27. Plaintiff streams as a virtual creator using a custom avatar that he designed and commissioned for use on his channel. The avatar is rigged to move in response to Plaintiff's movements while Plaintiff supplies the voice and personality of the character.

28. Plaintiff also enabled Twitch's video-on-demand functionality, resulting in recordings of his livestreams being stored by Twitch after his live broadcasts end. Plaintiff has created and retained approximately 30 clips from his streams that remain associated with his Twitch account.

29. At no time did Plaintiff authorize Amazon to use his Twitch streams, voice, virtual persona, channel content, or other identifying attributes as training material for Amazon's generative-AI models or services or for other Amazon commercial uses. Plaintiff did not receive notice that Amazon could use his Twitch content for generative-AI training and never opted into such use.

30. On or about August 17, 2026, Plaintiff learned of Twitch's generative-AI training setting and discovered that the setting permitting such use was enabled by default on his account. Plaintiff never affirmatively enabled the setting or otherwise permitted Twitch or Amazon to use his content for that purpose.

31. Defendant Amazon.com, Inc. is a Delaware corporation with its principal executive offices at 410 Terry Avenue North, Seattle, Washington.

32. Twitch Interactive, Inc. is a subsidiary of Amazon.com, Inc.[9] Amazon acquired Twitch in 2014 and has since operated Twitch within Amazon's corporate enterprise.[10]

33. Amazon develops, markets, provides, and monetizes artificial intelligence and machine learning services, including through AWS and Amazon Bedrock. Amazon's own SEC filings identify AI and machine-learning services as part of AWS' on-demand technology offerings.[11]

34. The acts alleged herein were authorized, directed, performed, implemented, ratified, and/or knowingly accepted by Amazon through its officers, employees, agents, controlled subsidiaries, affiliates, and instrumentalities acting within the course and scope of their relationship with Amazon.

## FACTUAL ALLEGATIONS

### A. Twitch Background

35. Twitch is a live-streaming platform where content creators (called streamers) can broadcast audiovisual content to viewers in real time.

---

[9] Twitch Interactive, Inc., *Privacy Notice*, https://legal.twitch.com/en/legal/privacy-notice/ (last visited Aug. 20, 2026).

[10] Amazon.com, Inc., *September 2014 8-K*, https://www.sec.gov/Archives/edgar/data/1018724/000101872414000046/amzn-2014september22x8k.htm (last visited Aug. 20, 2026).

[11] Amazon.com, Inc., *February 2026 10-K*, https://www.sec.gov/Archives/edgar/data/1018724/000101872426000004/amzn-20251231.htm (last visited Aug. 20, 2026).

36. Although Twitch is widely associated with video-game streaming, the content distributed through Twitch is not merely footage of gameplay. Twitch streams are audiovisual productions created and performed by individual streamers who speak to viewers, react to events occurring on screen, interact with other game participants, answer questions, tell stories, and otherwise supply a human performance around which the stream is organized.

37. Twitch creators generally operate through individualized channels identified by a channel name or handle. Through those channels, creators broadcast livestreams and may create or retain recordings, clips, highlights, images, text, and other content associated with the channel and creator.

38. Many Twitch streamers appear on camera throughout their broadcasts, resulting in hours of audiovisual content containing their actual faces, bodies, expressions, gestures, and voices. Others stream without showing their actual faces but nevertheless contribute their natural voices, channel identities, personalities, avatars, and other attributes by which viewers identify and recognize them. In both circumstances, the streamer supplies something distinct from the underlying game or other subject matter appearing on screen. The creator's speech, performance, reactions, interactions, and identity form part of the audiovisual content generated through the Twitch platform.

39. Twitch enables that content to persist beyond the original live broadcast. Streams can be retained as videos-on-demand ("VODs"), and portions of streams can be preserved as clips or highlights that remain associated with a creator's channel and available for view.

40. Twitch consequently amassed an enormous repository of creator-generated audiovisual content.

**B. Twitch's Disclosure of Harvesting Data for AI Training.**

41. Throughout the relevant period, Twitch's Terms of Service contained a broad license governing content uploaded, transmitted, displayed, performed, posted, or stored through Twitch.

42. That license expressly included both the underlying User Content and certain attributes of the people appearing in it, including their "name, identity, likeness, and voice." But the Terms expressly

stated the purpose for which Twitch could exercise those rights: "Twitch can exercise these rights in connection with monetizing *the Twitch Services*."[12]

43. The historical Terms thus expressly tied Twitch's exercise of the licensed rights to the Twitch Services. They did not specifically disclose to streamers that their streams, voices, photographs, likenesses, or other identity-bearing content would be taken and used to train or develop generative-AI models for any separate business. Nor did the historical User Content license specifically disclose generative-AI training as a purpose for which creator content would be used.

44. On August 12, 2026, Twitch quietly introduced a specific account control addressing Amazon's use of Twitch content for generative-AI training. The setting asked streamers to "[a]llow your channel content to train generative AI content models at Amazon."[13] It was automatically defaulted to "on."

45. Twitch explained that the content subject to Amazon AI training includes a creator's stream and stream chat, VODs, clips, highlights, and text and images appearing on the creator's channel.[14]

46. Twitch also confirmed that those materials are used to train Amazon models designed to generate or synthesize text, audio, images, or video. Twitch specifically identified creator audio as useful training material, explaining that a creator's audio could "help refine models that create speech to text," including functionality "across Amazon."[15]

---

[12] Twitch Interactive, Inc., *Terms of Service* at § 8(a)(i) (Apr. 13, 2026), https://legal.twitch.com/en/legal/terms-of-service/ (emphasis added) (last accessed Aug. 20, 2026).

[13] Jay Peters, *Twitch Streamers Can Now Opt Out from Training Amazon's AI*, The Verge (Aug. 12, 2026), https://www.theverge.com/tech/979112/twitch-streamers-can-now-opt-out-from-training-amazons-ai (last visited Aug. 20, 2026).

[14] Twitch Interactive, Inc., *Twitch Account Settings, Frequently Asked Questions, "What channel content (clips, chat, metadata, etc.) is eligible to be used for generative AI training?*," https://help.twitch.tv/s/article/twitch-account-settings (last visited Aug. 20, 2026).

[15] *Id.*

47. Twitch did not make the newly disclosed use opt-in. The setting was enabled by default, leaving creators to discover and disable it if they did not want their channel content used by Amazon for generative AI.[16]

48. Twitch's Chief Product Officer, Mike Minton, subsequently explained the decision in straightforward terms: "If it was opt in, nobody would opt in."[17]

49. Twitch also made clear that opting out operates only *prospectively*. Twitch explained that opting out prevents covered channel content from being used in "future training."[18]

50. At or around the same time Twitch expressly disclosed Amazon generative-AI training, Twitch also materially expanded the stated purpose of its User Content license. Where the historical Terms permitted Twitch to exercise licensed rights "in connection with monetizing the Twitch Services," the August 2026 Terms broadened that language to permit exercise of those rights in connection with "Twitch ***and/or its affiliates' business***."[19]

51. The timing is significant. Twitch simultaneously disclosed that creator content could be used to train generative-AI models across Amazon, gave creators a new control governing that use, and broadened its historical Twitch-specific license language to encompass the business of Twitch's affiliates—including Amazon.

52. According to the Federal Trade Commission, while

> Companies might be tempted to . . . simply chang[e] the terms of their privacy policy so that they are no longer restricted in the ways they can use

---

[16] Jay Peters, *Twitch Streamers Can Now Opt Out from Training Amazon's AI*, The Verge (Aug. 12, 2026), https://www.theverge.com/tech/979112/twitch-streamers-can-now-opt-out-from-training-amazons-ai (last visited Aug. 20, 2026).

[17] Alex Blake, '*If It Was Opt In, Nobody Would Opt In': Amazon's AI Is Being Trained on Your Twitch Streams Unless You Turn It Off—Here's How to Stop It*, TechRadar (Aug. 13, 2026), https://www.techradar.com/streaming/if-it-was-opt-in-nobody-would-opt-in-amazons-ai-is-being-trained-on-your-twitch-streams-unless-you-turn-it-off-heres-how-to-stop-it (last visited Aug. 20, 2026).

[18] Twitch Interactive, Inc., *Twitch Account Settings, Frequently Asked Questions, "What exactly does opting out cover? What doesn't it cover?*," https://help.twitch.tv/s/article/twitch-account-settings (last visited Aug. 20, 2026).

[19] Twitch Interactive, Inc., *Terms of Service* at § 8(a)(i) (Aug. 12, 2026 version), https://legal.twitch.com/en/legal/terms-of-service/ (last visited Aug. 20, 2026) (emphasis added).

> their customers' data . . . It may be unfair or deceptive for a company to adopt more permissive data practices—for example, to start sharing consumers' data with third parties or using that data for AI training—and to only inform consumers of this change through a surreptitious, retroactive amendment to its terms of service or privacy policy.[20]

**C. Amazon's Use of Twitch Content for AI Development.**

53. Amazon develops its own foundation models, including its Nova family of models, and makes generative-AI capabilities available commercially to customers through services including Amazon Bedrock.[21]

54. Data is a fundamental input in that business. Amazon acknowledges that it trains and tests its generative-AI services using numerous categories of data, including "licensed and proprietary datasets," synthetic datasets, open-source datasets, and publicly available content.[22] Many of these categories—such as the licensed datasets—are bought by Amazon, reflecting the commercial value of the data they contain.

55. Amazon further acknowledges that its training datasets may contain "text, images, audio, video, code, and other types of data relevant to the service's purpose," including rights-protected material and, in some instances, personal information.[23]

56. Amazon states that the quantity of data used to train and test different models ranges from "thousands to trillions of data points," and that its collection of this data began before 2022 and continues as Amazon develops and improves its AI services.[24]

---

[20] Federal Trade Commission, *AI (and Other) Companies: Quietly Changing Your Terms of Service Could be Unfair or Deceptive*, https://www.ftc.gov/policy/advocacy-research/tech-at-ftc/2024/02/ai-other-companies-quietly-changing-your-terms-service-could-be-unfair-or-deceptive (last visited August 21, 2026).

[21] Amazon Web Services, Inc., *What Is Amazon Nova?, Amazon Nova User Guide*, https://docs.aws.amazon.com/nova/latest/userguide/what-is-nova.html (last visited Aug. 20, 2026).

[22] Amazon Web Services, Inc., *Generative AI Development Disclosure* at § II, https://aws.amazon.com/legal/generative-ai-development-disclosure/ (last visited Aug. 20, 2026).

[23] *Id.*

[24] *Id.*

57. For example, Amazon Nova includes foundation models spanning text, image, video, and speech capabilities, including models capable of understanding video and models designed for conversational speech.[25]

58. Twitch content is naturally suited to those forms of AI development. It provides Amazon with large quantities of extended audiovisual material combining speech, text, visual information, conversation, human behavior, and contextual relationships within a single source.

59. For on-camera creators, Twitch provides an additional form of particularly rich human audiovisual data: moving recordings of actual people speaking, reacting, gesturing, and interacting over extended periods.

60. For creators who do not appear on camera, the content still provides hours of natural human speech, linguistic behavior, conversation, reactions, and creator-specific performances associated with identifiable Twitch accounts and personas.

61. Twitch therefore offered Amazon a large and continuously generated repository of human audiovisual content capable of being used in the development, training, testing, and improvement of AI models designed to understand and generate speech, images, and video content.

62. Amazon did not wait until Twitch introduced its August 2026 AI-training setting to begin using Twitch content for artificial intelligence development.

63. On April 2, 2024, during an interview at *The Information's* Creator Economy Summit, Twitch executive Mike Minton was asked whether Amazon used Twitch to train AI models. Minton responded, "Yeah, for sure," and stated that Twitch had "a role to play" in Amazon's AI efforts, subject to user trust and privacy considerations. The remarks were made in response to a question at an industry event, rather than as part of a broader announcement by Amazon or Twitch to Twitch users concerning the use of their content.[26]

---

[25] Amazon Web Services, Inc., *What Is Amazon Nova?, Amazon Nova User Guide*, https://docs.aws.amazon.com/nova/latest/userguide/what-is-nova.html (last visited Aug. 20, 2026).

[26] Theo Wayt, *Twitch Has "Role to Play" in Training Amazon AI, Executive Says*, The Information (Apr. 2, 2024), https://www.theinformation.com/briefings/twitch-has-role-to-play-in-training-amazon-ai-executive-says (last visited Aug. 20, 2026).

64. Minton qualified his remarks by explaining that Amazon was then using Twitch content only "in a prototyping, not in any kind of production scale, capacity." He also acknowledged uncertainty concerning what types of Twitch data would be suitable for training particular AI models.[27]

65. Minton's remarks evidence Amazon's use of Twitch content in connection with AI development by April 2024, but they did not disclose the nature or scope of that use, identify any particular Twitch content or creators whose content had been used, or indicate that Amazon was conducting production-scale training using streamer content. Nor did they constitute an official notice to Twitch users that their individual streams or identities were being used by Amazon for AI development. Amazon and Twitch did not identify which users were affected or provide streamers with a mechanism at that time to determine whether their own content had been used.

66. Further, the statements contradict Twitch's own disclosures about how it would use Twitch data and for what purposes.

67. \Twitch now acknowledges that Amazon uses Twitch content to train AI models and, given that the setting applies to *all* Twitch streamers, indicates that its collection and use of Twitch data applies indiscriminately across the site—including to Plaintiff's account.

68. Amazon's use included processes through which Twitch content was obtained, copied, ingested, selected, curated, analyzed, encoded, transformed, tested, or otherwise processed for purposes of developing, training, evaluating, or improving Amazon's AI systems.

**D. Amazon's Use of Plaintiff's and Class Members' Identity-Bearing Content Without Consent or Compensation.**

69. Plaintiff Thomas Gamlen is a California Twitch creator who streamed during the period in which Amazon was developing its generative-AI business and using Twitch content for AI development but before Twitch provided creators with account-level generative-AI training control.

70. Plaintiff Gamlen operates the Twitch channel "Raikiln." He began streaming in approximately July or August 2022. Gamlen streams through a custom virtual avatar while supplying his own natural voice and personality, and his streams similarly contain hours of his actual speech and interactions.

[27] *Id.*

71. Plaintiff's Twitch content contained his actual voice and other identity-bearing attributes associated with his channels and creator persona. Plaintiff also used Twitch functionality to retain his content as VODs, clips, highlights, or other channel content.

72. Plaintiff's content was among the Twitch content made available to and used by Amazon. Plaintiff's streams contained the same categories of audio, video, VODs, clips, and associated channel material that Twitch subsequently confirmed were used for Amazon generative-AI training. Further, the scope and language of the setting, which applies to all accounts, indicate that the data collection applies across the entire Twitch site.

73. Plaintiff never knowingly authorized Amazon to use his voice, creator identity, Twitch content, or other identifying attributes as training material for Amazon's generative-AI business. Plaintiff never negotiated an AI-training license with Amazon or received compensation from Amazon for such use.

74. Plaintiff , like all Class members, was thereby deprived of control over whether and on what terms their identities would be commercially used for generative-AI development.

75. The harm is ongoing to the extent Amazon continues to possess, use, deploy, license, improve, or otherwise commercially exploit AI models, datasets, checkpoints, representations, or other systems developed or improved through the unauthorized use of Plaintiff's and Class members' identity-bearing Twitch content.

**TOLLING**

76. Any applicable statute of limitations has been tolled under the delayed-discovery rule. Plaintiff and Class members did not know, and through reasonable diligence could not have known, that Amazon was using their Twitch content, including their voices and likenesses, for AI development or training. Plaintiff first learned of Amazon's use of Twitch content for these purposes in or around August 2026, when Twitch introduced the "Training for Generative AI" setting.

77. Before that time, Plaintiff had no reason to suspect that Amazon was using his content for AI development or training and therefore no duty to investigate such a claim. Amazon did not provide Plaintiff or Class members individualized notice of that use, and generalized public reporting or a single

statement concerning Amazon's use of Twitch content for AI development were insufficient to place any particular streamer on notice that his or her own content and identity had been used.

78. Accordingly, Plaintiff could not reasonably have discovered his claims earlier despite reasonable diligence, and any applicable limitations period was tolled until he discovered, or reasonably could have discovered, Amazon's conduct.

## CLASS ACTION ALLEGATIONS

79. **Class Definition:** Plaintiff brings this pursuant to Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), (b)(3), and (c)(4),on behalf of himself and other similarly situated individuals defined as follows:

> All natural persons who resided in California during the Class Period who maintained or appeared as the primary or featured streamer on a Twitch channel and were readily identifiable by name, voice, photograph, likeness, or other indicia of identity in that channel content, and whose Twitch channel content Amazon used for Amazon generative-AI training.

80. Plaintiff reserves the right to modify the Class definition or add subclasses as needed prior to filing a motion for class certification.

81. The "Class Period" is the period beginning on the date Amazon began using Twitch streamers' data for undisclosed purposes—as amended, if applicable, by the Court's determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues—and ending on the date of entry of judgment or preliminary approval of a settlement.

82. Excluded from the Class are Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

83. Numerosity/Ascertainability. Members of the Class are so numerous that joinder of all members is impracticable. The exact number of Class Members is currently unknown to Plaintiff. However, given the size of Twitch's user population (millions of users), it is estimated that there are thousands of individuals in the Class. Class membership is readily ascertainable from Amazon's records, including records of the datasets used to train Amazon's AI products.

84. Typicality. Plaintiff's claims are typical of the claims of Class members. Plaintiff and Class members appeared as identifiable streamers in Twitch content; Amazon obtained and used that content under a common AI-development program; Amazon did not negotiate individual AI-training licenses or compensation with them; and their injuries arise from the same course of conduct.

85. Adequacy. Plaintiff is fully prepared to take all necessary steps to represent fairly and adequately the interests of the Class members. Plaintiff's interests coincide with, and are not antagonistic to, those of the Class. Plaintiff is represented by attorneys with experience in the prosecution of class action litigation. Plaintiff's attorneys are committed to vigorously prosecuting this action on behalf of the Class.

86. Common Questions of Law and Fact Predominate. Questions of law and fact common to the Class predominate over questions that may affect only individual members because Amazon has acted on grounds generally applicable to the entire Class. The following questions of law and fact are common to the Class:

(a) whether Amazon obtained Twitch content for generative-AI training and development;

(b) the categories of Twitch content Amazon obtained and the time period during which it did so;

(c) whether Amazon used readily identifiable streamer names, voices, moving photographs, likenesses, and associated identity information in its AI-development processes;

(d) which Amazon models, services, datasets, training runs, or evaluation processes used Twitch content;

(e) whether Amazon's use was knowing and commercially connected to Amazon's AI products and services;

(f) whether Class members provided prior consent specifically authorizing Amazon generative-AI training during the Class Period;

(g) the methodology for measuring statutory damages, attributable profits, restitution, avoided licensing costs, and other class-wide monetary relief; and

(h) whether declaratory and injunctive relief is appropriate to prevent continued exploitation of identity-bearing training materials and systems developed from them.

87. Superiority. Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit many similarly situated persons to prosecute their common claims in a single forum efficiently and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweigh potential difficulties in management of this class action. Plaintiff is unaware of any special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

88. Rule 23(b)(1). Certification is also appropriate under Rule 23(b)(1) because prosecuting separate actions by individual Class members would create a risk of inconsistent or varying adjudications that could establish incompatible standards of conduct for Amazon and could, as a practical matter, substantially impair or impede the ability of absent Class members to protect their interests.

89. Rule 23(b)(2). Certification is also appropriate under Rule 23(b)(2) because Amazon has acted or refused to act on grounds generally applicable to Plaintiff and the Class, including through uniform practices concerning the acquisition, disclosure, and use of Twitch users' content and identities for generative-AI purposes. Accordingly, final injunctive and declaratory relief is appropriate respecting the Class as a whole.

90. Rule 23(c)(4). In the alternative, to the extent the Court determines that certification of any claim in its entirety is inappropriate, Plaintiff seeks certification under Rule 23(c)(4) of particular common issues, including issues concerning Amazon's uniform conduct, whether Amazon obtained legally sufficient consent for the challenged use, whether the challenged conduct constituted a commercial use of Class members' identities, and whether Amazon's conduct violated the statutes and common-law duties alleged herein.

## CLAIMS FOR RELIEF

### COUNT I

### Violation of California Civil Code § 3344

91. Plaintiff incorporates the preceding allegations as though fully set forth herein.

92. California Civil Code § 3344 protects against the knowing, nonconsensual use of a person's name, voice, signature, photograph, or likeness on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of products, merchandise, goods, or services.

93. Plaintiff and Class members are readily identifiable in their Twitch channel content by their names, voices, moving photographs, likenesses, and other indicia of identity. Plaintiff's and Class Members' identity-bearing content has commercial value, including to Plaintiff and Class members themselves.

94. Amazon knowingly used these protected identity attributes when it acquired and processed Twitch streams and related content as training and development material for Amazon generative-AI models and services.

95. Amazon's use was directly connected to a commercial purpose. Amazon used Plaintiff's and Class members' identity-bearing material to create, train, test, refine, validate, benchmark, evaluate, and improve AI models and services that Amazon develops, markets, offers to customers, uses to enhance its commercial products and services, and monetizes through AWS, Bedrock, Nova, and/or other Amazon AI offerings.

96. Amazon's AI-development use was not incidental to an unrelated publication. The challenged use was the development process itself: Amazon took the protected identity attributes because the audiovisual content containing them had value as training and evaluation material for Amazon's commercial technology.

97. Plaintiff and Class members did not provide Amazon consent to use their identities for Amazon's commercial purposes, including for the generative-AI training and development.

98. Amazon's conduct was knowing, willful, and undertaken for commercial advantage. Amazon knew that Twitch content contained the actual faces, voices, names, and likenesses of creators;

knew Twitch content had value to Plaintiff and Class members, as well as to Amazon AI-training material; and intentionally used that content to improve AI systems.

99. Amazon knew that Twitch streamers used their biometric information, including their names and faces, as well as their streamed content, for its own commercial gain.

100. As a direct and proximate result, Plaintiff and Class members suffered injury, including loss of control over the commercial use of their identities, deprivation of licensing value, uncompensated exploitation, diminution of the exclusivity of their identity rights, and other damages.

101. Under California Civil Code § 3344, Plaintiff and Class members are entitled to the greater of $750 or actual damages for actionable unauthorized uses, profits attributable to those uses and not included in actual damages, punitive damages as appropriate, attorney's fees and costs, and injunctive relief.

**COUNT II**

**Common-Law Right of Publicity / Commercial Misappropriation**

102. Plaintiff incorporates the preceding allegations as though fully set forth herein.

103. California common law protects each person's proprietary interest in the commercial value of their own identity.

104. Amazon used Plaintiff's and Class members' identities by acquiring and exploiting their actual names, voices, moving photographs, likenesses, and personas as input material for Amazon's generative-AI development.

105. Amazon appropriated those identities to its own advantage, commercially and otherwise, by avoiding the cost of negotiated licenses, obtaining valuable human audiovisual data, improving AI capabilities, accelerating model development, increasing the value and competitiveness of its AI products and services, and earning or positioning itself to earn revenue from those systems.

106. Plaintiff and Class members did not consent to Amazon's challenged use of their identities.

107. Amazon knew that Twitch streamers used their biometric information, including their names and faces and their streamed content, for their own commercial purposes. It nonetheless harvested this data, without consent or compensation, for its own financial gain.

108. Amazon's appropriation caused injury, including loss of licensing value, loss of control over commercial exploitation, impairment of the exclusivity and market value of their identities, and the transfer of economic value to Amazon without compensation.

109. Plaintiff and Class members are entitled to actual and compensatory damages, Amazon's profits attributable to the misappropriation, restitutionary relief to the extent available, punitive damages, declaratory and injunctive relief, and all other relief permitted by law.

**COUNT III**

**Violation of California Business & Professions Code § 17200, *et seq*.**

110. Plaintiff incorporates the preceding allegations as though fully set forth herein.

111. California's Unfair Competition Law ("UCL") prohibits any unlawful or unfair business act or practice. Cal. Bus. & Prof. Code § 17200.

112. Amazon's conduct is "unlawful" because it violates California Civil Code § 3344 and California common law protections against commercial appropriation of identity, as alleged above.

113. Amazon's conduct is independently "unfair." Amazon secretly obtained and used the economic value of California creators' identities to improve Amazon's commercial AI systems without consent or compensation for that use. Amazon did so despite knowing that this data had significant commercial value, both to Plaintiff and Class members and on the market (as demonstrated by Amazon's purchase or licensing of similar data).

114. The practice offends established California policy protecting an individual's ability to control commercial use of the individual's name, voice, photograph, likeness, and identity, and the harm to creators substantially outweighs any utility in taking identity rights without negotiated consent or compensation.

115. Plaintiff and Class members have suffered injury in fact and lost money or property as a result of Amazon's conduct, including the lost licensing value of their identities, the economic value

taken and retained by Amazon without payment, and impairment of their exclusive rights to determine the commercial terms on which their identities may be used for AI training.

116. Plaintiff and Class members seek prospective injunctive relief under Business & Professions Code § 17203. Monetary damages cannot provide an adequate remedy for the ongoing use of their identities in future Amazon training, future model development, or continuing deployment of AI systems developed from the challenged training because those uses would recur after any damages award and cannot be fully valued before they occur.

117. Plaintiff and Class members also seek restitution only to the extent it restores to them specific money or property in which they have an ownership interest and to the extent such relief is not duplicative of an adequate legal remedy.

**COUNT IV**

**Quasi-Contract / Unjust Enrichment (Pled in the Alternative)**

118. Plaintiff incorporates the preceding allegations as though fully set forth herein.

119. Plaintiff and Class members conferred a measurable benefit on Amazon: the uncompensated commercial value of their identities and identity-bearing audiovisual content as training and development material for Amazon's generative-AI systems.

120. Amazon knowingly accepted, used, and retained that benefit. Amazon's AI systems were improved with training material Amazon did not license directly from Plaintiff and Class members, allowing Amazon to avoid costs it otherwise would have incurred to obtain this data or data like it. Meanwhile, Amazon knew that Twitch streamers used their biometric information, including their names and faces and streamed content, for their own commercial gain.

121. It would be unjust for Amazon to retain the value conferred by its unauthorized commercial exploitation of Plaintiff's and Class members' identities without paying for it.

122. Plaintiff pleads this claim in the alternative to legal claims for damages. To the extent the benefits Amazon received are not fully recoverable through damages, Plaintiff and Class members are entitled to restitution, disgorgement, and other appropriate quasi-contractual relief.

## RELIEF REQUESTED

WHEREFORE, Plaintiff, on behalf of himself and the proposed Class, respectfully request that the Court grant the following relief:

(a) Certifying the proposed Class under Federal Rule of Civil Procedure 23, appointing Plaintiff as Class Representative, and appointing undersigned counsel as Class Counsel;

(b) Declaring that Amazon's challenged use of Plaintiff's and Class members' names, voices, photographs, likenesses, and identities violated California Civil Code § 3344 and California common law;

(c) Awarding statutory damages under California Civil Code § 3344 for each actionable unauthorized use as determined by law;

(d) Awarding actual, compensatory, and consequential damages in an amount to be proven at trial;

(e) Awarding Amazon's profits attributable to its unauthorized uses;

(f) Awarding punitive and exemplary damages as permitted by law;

(g) Awarding restitution, disgorgement, and other equitable monetary relief to the extent available and nonduplicative;

(h) Entering preliminary and permanent injunctive relief prohibiting Amazon from using Plaintiff's and Class members' identities and identity-bearing Twitch content for future generative-AI training or development without legally sufficient prior consent;

(i) Ordering an accounting sufficient to determine Amazon's uses of Class content, the Amazon models and services that benefited, the periods of use, avoided licensing costs, revenues, and profits attributable to the challenged conduct;

(j) Awarding reasonable attorney's fees and costs as authorized by Civil Code § 3344 and other applicable law;

(k) Awarding pre-judgment and post-judgment interest at the maximum lawful rate; and

(l) Granting such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of the proposed Class, demands a trial by jury for all the claims asserted in this Complaint so triable.

Date: August 21, 2026

Respectfully Submitted,

*/s/ William J. Edelman*

William J. Edelman (SBN 285177)
**MILBERG, PLLC**
280 S. Beverly Drive-Penthouse
Beverly Hills, CA 90212
Phone: (771) 474-1121
Email: wedelman@milberg.com

Michael A. Acciavatti (*pro hac vice* forthcoming)
**MILBERG, PLLC**
405 East 50th Street
New York, NY 10022
Tel: 212.594.5300
macciavatti@milberg.com

Adam E. Polk (SBN 273000)
Abbye R. Ognibene (SBN 311112)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: 415.981.4800
apolk@girardsharp.com
abbyeo@girardsharp.com

*Attorneys for Plaintiff and the Proposed Class*